Good morning, ladies and gentlemen. Judge Lee and I are here, and as you can see, we are also joined by Judge Jackson Acumi, who is appearing remotely. So I'm going to keep the traffic lights moving, and we are now ready to hear Mr. Atkins from you in our first case for today, Grubhub v. Relish Labs, LLC, No. 22-1950. May it please the Court. The District Court's order has at least three instances where the defendant does not follow it, weighing and balancing all of the factors, a side-by-side comparison, and drawing an adverse inference against Homeshelf for not doing a survey. For example, in A12, the Court cites Eli Lillian and says proper weight should be given to the various factors, and yet the Court does precisely the opposite. In footnote 2 of A12, the Court says, I'm not presently considering those four factors in this Court's multi-factor test. That means that they took the multi-factor test, did not consider, weigh, or balance those factors in determining to deny the preliminary injunction motion. Second, on page A12, the don't do a side-by-side analysis, and it does exactly that on the following page. You don't do a side-by-side analysis if it does not show up in the marketplace that way, and here it does not show up in the marketplace that way. The R&R did a wonderful job of explaining that and referencing how both parties said it does not show up side-by-side. That's on As I gather, we have before us in this appeal really only three of the factors out of the seven that this Court has identified, since four of them seem to be conceded by all sides, in similarity to the products and so on. I'd like you to talk a little bit about intent, because this is a reverse confusion case, and the circuits seem to be a little different in the way they approach the intent question. Yes. There's quite a disparity throughout the country with regard to intent, and in 1992 in the Sands case, this Court said, hey, there's reverse confusion, found that there was reverse confusion, and yet intent is essentially irrelevant in a reverse confusion case. Did you understand that to be across the board? I certainly can see in a reverse confusion case that it's not meaningful to talk about intent to palm off your products as though they were somebody else's, because that's not the point. But if you look at, for example, what the Ninth Circuit has said, in a reverse confusion case, and I'd actually like to know what your theory is in this case, that the junior user is somehow swamping the market, is actually pushing out the goodwill or the market position of the senior user. Is that in our law, or would we need to modify our law to recognize that? I believe your question is, do you need to modify from Sands with it's essentially irrelevant? I think the answer is yes, and where I would invite the Court to look is the reply brief 25. On page 25 of the reply brief, you will see that McCarthy, which was cited in Grubhub's response, collects cases and recommends at the top of page 25, it says, McCarthy, in reverse confusion cases, courts should ask whether there is some evidence that the junior user, when it knew of the senior user, in this case it did, that's undeniable, was at fault for not adequately respecting the rights of the senior user. And so the answer to your question is yes, I would recommend that intent be found, but if it's not, then the District Court made a mistake by applying intent and finding it in favor of Grubhub, and that would be a legal error. Right, so, well, okay, so you're arguing the alternative then, that if there is no intent factor at all, then there was a mistake at the District Court level, not the magistrate judge, by the way, but the District Court level in applying it, because we really need to dig down to intent to do what, you know, because in the normal cases, it's intent to pass yourself off as the other party, and in the reverse confusion cases, it's, of course, not. Right, so in a forward confusion, it's intent to pass off. Right. You make some bootleg Disney DVDs and you say, here it is, that's intentional in passing off. In a reverse confusion, it's, did you know about the mark, and did you intend to swamp and overwhelm the market, as is the case here? Can you tell me, I mean, this, we may not be here right now, but just for my edification, your theory of damages in this kind of reverse confusion case? I'm not liberated to discuss those, and I'm not conversing in those at this moment. Okay. But the damages would be. I mean, it's just that we're still kind of at a theoretical level, you know, because say in antitrust cases, sometimes damages are for an overcharge, sometimes they're for exclusion from a market, sometimes they're from, you know, a very broad heading level. I'm sorry, I'm not quite following. I'm not asking you for a dollar sign, I'm just asking for theories, you know. Well, for example, Grubhub, I'm sorry, our client, Home Chef. Home Chef. Home Chef. Thank you. Started here in Chicago in 2014. And they're in a slightly different niche of the market from that which Grubhub occupies, it seems. Actually, no. Grubhub delivers meals as well as groceries. As a matter of fact, I believe it's, exhibit MP22 shows a printout from, behind a declaration from a Kroger paralegal, hey, here is Kroger delivering groceries. Also, the vice president of growth at Grubhub, at 46-4, exhibit E, page 98, said, this is what we're delivering, including groceries, and Grubhub's answer to the counterclaim, docket entry 39, page 32, also said, we deliver groceries. But now coming back out of the weeds, you said, hey, aren't they, I'm sorry, the answer is no, because they're both meal delivery. Grubhub delivers groceries, but Home Chef also has their ready-to-eat meals delivered by Grubhub's competitors, DoorDash and Instacart. So, counsel, you know, you keep referring to Grubhub, and we talk about Grubhub, and Grubhub is all over the briefings. And I think that both sides seem to state, or at least acknowledge, that Grubhub itself is a pretty strong trademark, right? And so, perhaps, can you discuss which mark it is that your theory focuses on? What, is it the Jet House mark versus the Grubhub House logo? And what are we to make of the other side's argument that, in fact, because Grubhub is such a strong trademark, and used in combination with the alleged infringing trademark, that that addresses many of Home Chef's concerns? Yes, that is a great question, because it's complicated. As you'll see in the briefing, we've got, I say we, Home Chef has three different categories of marks. One is the Home Alone, which is really important. They use that alone, and they use it to co-sponsor. So, you'll find the house, the Home Chef house, it's referred to so many different ways, I apologize, but the Home Chef house plus Impossible. Impossible is a vegetarian meat, and you'll see Home Chef with Impossible. But without the words Home Chef underneath the little house. Just the house alone. Just the house, yeah. It's in Shira Schwartz's declaration, probably about pages eight or nine, and they do that often. They also use the Home Chef mark alone. I'm coming back out to answer your question. That Home Chef mark getting used alone is really important. It's what allowed Home Chef to grow as much as it did. So, that mark is used alone. It's used with the word mark Home Chef, and then separately there is a Home Chef word mark. We're not using, we're not, it's not the Home Chef word mark, but it's both of them. And the USPTO looked at the Jet House alone and said, that's confusingly similar, and sells the similar products to both the Home Chef house mark and the Home Chef house mark plus the word mark. So, I'm trying to be precise. So, but has Grubhub ever used the, what you call the house or the home alone mark in promoting its services and products? Yes, they used it alone, which is in Exhibit 47-1. But in those exhibits, it seems like they, it was always closely connected or in conjunction with the word mark Grubhub, right? And so, would someone going into the website, I think there was the websites, there were some screenshots of websites and what have you, ever think that, or would a consumer think that Grubhub was using the home alone logo apart from its word mark? So, two things, they don't use it just with Grubhub. They use it with Seamless. That Vice President of Growth, Kirshen, at 46, sorry, 46-4, shows the mark where, the Jet House mark plus Seamless. And all throughout the briefing, it's been like, oh, just forget about Seamless. It's going to go away. It's going to go away. It's now. No, I take it, your theory is if the Jet Home could have Grubhub under it and could have Seamless under it, could easily have Home Chef under it. So, people could be confused. Yes, but it goes farther than that. If you take the Home Chef registered mark, just that mark, and say, oh, look, there's Grubhub, forward confusion. But if somebody comes along and looks at the Grubhub or Seamless mark and says, oh, there it is, and then later on, looks at Home Chef's home mark, which is used very much, and now they can't use it alone because it looks just like Grubhub. That's the reverse confusion. It's, hey, Home Chef can't use its mark alone. Council, I'm still struggling at the level of our standard of review, though. We're not at the summary judgment stage, which is where a lot of the cases that you quote in your brief are from. We're at the preliminary injunction stage, where, as you know, we have this extremely high burden. It's plausibility. And so, I understand that you do believe the district court should have weighed factors differently. I think you were trying to tell us in your opening, but you've cited a variety of cases. Many of them don't negate the plausibility of the district court's findings. Despite your view that he should have weighed differently, more like the magistrate judge did. So, can you point me to what part of the findings of the district court, based on the evidence, is simply not plausible? I'm sorry, is not what? At this, not plausible, at this preliminary injunction stage? Well, Your Honor, this is an abuse of discretion analysis. That's the standard of review. And the failure to apply the law correctly is an abuse of discretion. And here, the law was applied incorrectly in at least three different ways. One is considering weighing and balancing the seven factors. Four of those were set aside in a footnote and said, I do not presently consider them. Is that a fair consideration? Or was the court saying, Grubhub is not even contesting four of these factors. And those factors have been found in Home Chef's favor. Let me concentrate on the three contested factors. How is that error as opposed to focusing on what's really in dispute? Because if you look at footnote two, and I apologize, it's only a footnotes two sentence. The first one says, we do not presently consider it because they didn't object. And the second sentence is, okay, even if I did consider them they wouldn't make a difference, but they weren't considered. And it's a multi-factor test where you have to balance. First, you have to consider weigh and balance. And the reason is because they're all related, all those factors. But to finish up the rest of your question is, there was legal error with regard to side-by-side analysis of similarity. Case law says you don't do that. The last one is the adverse inference. The judge said, you know what? I'm holding an adverse inference against you, which is contrary to the same law that he cited. I'm sorry, that the district court cited, saying, I'm going to hold an adverse inference against you due to the service. I believe I need to reserve the rest of my time. If you would like to reserve your last minute for rebuttal. Thank you. That's fine. We'll now hear from Mr. Bernstein. Welcome. May it please the court. I'm David Bernstein with Deborah Boyce and Plimpton, and we represent Grubhub and Jet. So I'd like to start with Judge Jackson and Cumie's question because I think that goes directly to what the standard is. The question here is whether the district court found that there was no likelihood of confusion and whether that finding is plausible. The plaintiff, effectively the plaintiff, because we were a declaratory judgment plaintiff, but the move into this preliminary injunction had to make a strong showing of a likelihood of success. And as this court has found and as your honors have already identified, this court has said the three most important factors are similarity of the mark, actual confusion, and intent. But what do we do when intent, which is where I wanted to start, at a minimum does not operate the same way in a reverse confusion case. It's not as though anyone thinks that Grubhub is trying to make everybody think it's really Home Chef. You know, Grubhub is a long established company. So we have said in the context of reverse confusion that intent is simply not useful. Now perhaps you could go further and say, you know, is there an intent to deprive Grubhub, sorry, to deprive Home Chef of the commercial value of its marks? We can get into that. So that factor is at least questionable. Actual confusion in a preliminary injunction case doesn't need to be shown already to have happened. It's that the defendant's use of the mark is likely to cause confusion among consumers. That's our sport fuel case, but it's plenty of other cases as well. And there's actually quite strong evidence of the similarity between these marks in both appearance and suggestion. So why isn't it the case that you have to go back to the uncontested factors, say, okay, these are similar products. There's concurrent use. Consumers are not gonna be exercising much care. They just want a dinner. And it's a strong mark, the plaintiff's mark is. Why isn't a re-weighing necessary? So there's a lot there, Your Honor, and I'd like to unpack it, if I may. First of all, there is a claim of both forward confusion and reverse confusion. And so the intent factor is surely relevant on forward confusion. But in the briefs, unless I read different briefs than everybody else, I mean, certainly the emphasis seemed to be on reverse confusion. I think the plaintiff's briefs are still pushing both theories, but yes, reverse confusion is the theory they're pushing now. And Your Honor, in the Sands-Taylor case, which I believe, Your Honor, was on the panel, that was the classic example of reverse confusion. You had a very small company, a small Vermont company. It'd been around for 180 years. It had a small beverage business as part of that, and it was using Thirst Aid as its trademark. And a gigantic company, PepsiCo and Gatorade, swamped the market. Your Honor, in the 30 years I've been practicing trademark law, I have never seen a reverse confusion case where the junior user, sorry, the senior user, is itself a beat myth. Home Chef is a billion dollar business. But it doesn't mean that they don't have economic investments in their trademark. They do, but the theory of reverse confusion doesn't work, and I'll tell you why, Your Honor. The theory of reverse confusion is that you've got a small company that's not well known, like Sands, and they wanna be able to expand their use of Thirst Aid. But when they use Thirst Aid, because Gatorade has swamped the marketplace, they can't use their own trademark. In this situation- But the allegation here is that, without, I guess, putting Home Chef underneath the little house every time, you have, in fact, precluded it, because people, ordinary people, just on the street, looking at this little house with a fork and knife, are going to confuse the two. And that's what the PTO person said, certainly not conclusive evidence, but it's interesting evidence. Well, the PTO did not look at the market issue. And to Judge Lee's point, the accused mark, the market issue here, is the jet mark, the house and cutlery mark, used with Grubhub, and also, to some degree, with Seamless. That is being phased out, but Seamless is a very well-known mark, at least in New York. And Your Honor may not be as familiar with that brand, but it is one of the brands of Grubhub. But I thought that was a damaging fact for you, because if the jet house can apply to both Grubhub and Seamless, then why can't it apply to a third, or a fourth, or a fifth brand name? Your Honor, these are questions of fact. And I think, when I read their briefs, and I listened to Mr. Atkin's argument, what he was arguing today is basically for a do-over, asking this court to substitute its judgment for the district court. The district court had all of these facts before it. And what this court has said is that the standard of finding a likelihood of confusion in this circuit, it's a question of fact. Oh, sure, but the facts need to be found under the correct legal framework. The Supreme Court has sort of blended this in all sorts of, you know, have a look in the floor, think of all kinds of cases, where it said, if you apply the wrong framework, you know, garbage in, garbage out, basically you're not gonna get the right facts. So let's take a look at the three most important elements in this court. You asked about intent, Your Honor. Mr. Atkins talked about McCarthy. This is what Professor McCarthy says about intent, and this is on page 35 of our brief. He says, in the reverse confusion context, the question is, did the defendant knowingly proceed to use a similar mark after reasonably determining that there'd be no conflict? That does not qualify as the kind of intent that would favor the senior user. The intent issue in Sands was very different, and I would say, Your Honor, that it's a question of fact as to whether the intent here shows an intent to swamp the marketplace and destroy the goodwill in their mark. That's not what the district court found. When we look at, and it is true that there are cases in this court. Did the district court ever ask the right question about intent in a reverse confusion setting? The district court did, Your Honor. Oh, sure. The district court talked about the use of the brand name and what the intent here was. Remember that my client, Jett, developed this house and cutlery logo before Home Chef ever had their logo. We've been using that logo all around the world in connection with our businesses in many countries. When they acquired Grubhub. Are you arguing that you're not the junior user? In the United States, Your Honor, we are. But it goes to the question of intent. In other words, when my client acquired Grubhub here in the United States, they wanted to bring the same trademark that they've used all around the world that is known as a global brand and use that here in the United States. So they're linking, on a global basis, their business. Now you're back at forward confusion. I thought you were supposed to be discussing reverse confusion. Yeah, so it goes to reverse confusion, Your Honor, because what the district court found was there was no intent here to swamp the marketplace and destroy their trademark. Indeed, when you have such well-known trademarks, as these are both billion dollar companies, when you have such well-known trademarks, consumers are adept at distinguishing between them, especially when we're talking about delivery of food to the home. And so having a logo that's a picture of a house and a picture of cutlery, that's hardly the most distinctive or creative logo. What the district court found is that the most salient part of the mark is actually the Grubhub name. And that that, on both a forward and reverse confusion context, would mitigate against confusion. Now, on the intent factor, Your Honor. But you all are conceding that Jett and Grubhub do use the mark alone without the name at times. No, we're not, Your Honor. That's not true of Grubhub. As I think it was Judge Lee pointed out, when we do use it, it is always in conjunction with the Grubhub name or Seamless powered by Grubhub until Seamless is phased out. And it's very deceptive. I'm sorry to use that word in Kroger's brief, where they cut and paste tiny portions of our website to suggest that we use the logo alone. That's on the Grubhub website. They've photoshopped out the rest of the website. When we use the mark, it's always with Grubhub. And that was a key reason why the district court found, as a matter of fact, and this is a plausible finding, that the USPTO's decision is not probative here. Because the USPTO did not consider the mark along with Grubhub. The USPTO only looked at the mark with the logo alone. Now when JET announced that it was going to acquire Grubhub, it applied for that mark. But ultimately, when the acquisition was completed a year later, what Grubhub decided was that it was always going to use the mark with Grubhub. And again, with Seamless powered by Grubhub for some period of time. So on intent, there are cases, Your Honor, where the courts have said intent is essentially irrelevant, but it depends on the circumstances in the reverse confusion setting. And it could still be relevant if the court finds that, as Professor McCarthy says, and again, that's on page 35 of our brief, that the intent issue is, did you intend, in the reverse confusion context, to push their goodwill out, to basically steal their trademark? There's no evidence. It's hard to get, I mean, I can certainly see moving in that direction. But looking at this court's prior cases, we've spoken pretty flatly about this. Intent is irrelevant in the reverse confusion inquiry. Now, you may be arguing that that's not the correct rule of law, in which case we'd have to reconsider, but that's what we've said. I actually do not believe, Your Honor, this court has said intent is irrelevant. I believe this court has said it's essentially irrelevant. So how about Fortress, Grand, Warner Brothers, the seventh factor intent is irrelevant in a reverse confusion analysis because the junior user is not trying to profit from the senior user's brand. And look, I think that it is a fact question for the district court. I do not think that this is a legal error for the district court to consider intent. And I would note, by the way, that Kroger made a huge deal about intent and our alleged bad intent before the district court. It's only now that the district court has found we did not act in bad intent, that they're saying it's irrelevant. But let's assume it is. Let's assume that for reverse confusion, intent is neutral. Because let's assume it's neutral. We still have the two of the other most important three factors, being similarity and confusion. And the district court found, plausibly, without clear error, that those weighed heavily in our favor. Now, Mr. Atkins really, I think, misrepresents the footnote in the district court's decision on the other four factors. And to me, though, just looking at a common sense level at the little house with the fork and the knife for Home Chef, and the jet house, I'll call it, aside from the fact that the colors are a little different, but the claims for colors, no one's making too much of. They're very similar. Respectfully, Your Honor, the question of law is not whether you, sitting on this appeal panel, think they're similar. The question of law is, in the marketplace context, when the marks are considered as a whole, would consumers be confused? And the district court, considering all of the evidence, including the surveys, found that there was no likelihood of confusion. Now, Mr. Atkins was. But there were some real problems with those surveys, too. The Ever Ready survey? Your Honor, I'm gonna say that those are questions of fact, and the district court considered the criticisms. So why have a court of appeals? We get to look and see. Because the court of appeals looks at two things. Was there an error of law, and were the facts clearly erroneous? And when you have surveys. I would correct you and say, was there an abuse of discretion in the decision not to grant, in this instance, a preliminary injunction, when more will happen in a case? And what is the preliminary injunction? Here, it's a, you know, a preliminary injunction's about preserving the status quo. For well over a year, we have been using this logo. And they have, in well over a year, we've had hundreds of millions of transactions under this logo. They come forward with two social media posts. And I'd like to talk about those. The first one is clearly not confusion. It's somebody who says, oh, look at this logo. There's elements that are similar to the other logo. That's someone who recognizes they're two different companies, that they're not related. And the district court plausibly and properly, in my view, but certainly plausibly found that that's not evidence of confusion. And the second one is someone who poses the question to Kroger, have you and Grubhub merged? And I think you could say, okay, there's one instance where someone didn't say, wow, interesting that you merged, posed the question, did you merge? And the district court says, that is something that's entitled, at least to my considering it, but it is overwhelmed by all the other evidence, including the surveys. And your honor, respectfully, I don't agree that these are flawed surveys. There's no perfect survey, we know that. But the district court carefully considered the objections to the survey, carefully considered our responses to that, and found, as a matter of law, that those surveys were probative. And what did the surveys found? On both forward and reverse confusion, zero. Now, I've been doing this for a very long time. You don't see zero in surveys. Because they only showed people things that were the little house with the words Home Chef under it, and then they were asked, whose company is this? And they said Home Chef. And they're also asked all the other questions. Are they affiliated with anyone else? Do they have a business relationship with anyone else? Do they have a sponsorship? You know, this is why I don't think you can dismiss the USPTO letter so quickly. The USPTO looked at Home Chef, the logo alone, the trademark alone, and with the label. Your Honor, the USPTO does not consider reverse confusion. The USPTO was focused on forward confusion only. This is relevant to the confusion factor that you're talking about. If Home Alone uses it without a word mark as well, which it does, then there could be confusion. That word mark could just as easily be grubhub or seamless. I know my time is up. I'd love to answer that response. Please answer the judge's question. So, Your Honor, what the USPTO looked at was only the Jett housemark and the Home Chef mark. But that's not- But it looked at two Home Chef marks. It didn't just look at one Home Chef mark. Well, it was the same mark, one in color, one was not. But the key thing they were missing, Your Honor, the key thing they were missing is that they were never looking at the Jett mark with grubhub. That is the comparison that the district court said. And by the way, the cases are legion on this, that the USPTO's assessment, this is an initial assessment by a trademark examiner, that that assessment is not entitled to wait when it's comparing different marks, not in the marketplace. And remember, too, the PTO did not have all the other evidence that was before the district court. It did not have the two surveys. It did not have all the fact evidence. And so, Your Honor, the district judge made a finding of fact that the USPTO office action, an initial office action, was not entitled to be a determinative factor here. The judge considered it. He didn't disregard it. He considered it. But he found that it did not overwhelm all of the other evidence of confusion in this record, of lack of confusion. Any other questions from the panel? Thank you very much, Your Honor. All right, thank you, Mr. Bernstein. Mr. Atkins, we'll give you two minutes to balance things out. Thank you, Your Honor. I have four quick points, one of which is the USPTO, that's 128 pages with both the Home Chef website and the Grubhub website printed out and included in it. There, the examiner looked at the similarity of the marks and the similarity of the products. Second, in regard to Judge Jackson's question, Mr. Bernstein said we're looking for a do-over. We are not. If a court does not apply the correct law or rests its decision on a clearly erroneous finding of material fact, it is an abuse of discretion. You really need to look no further than to page 810, that top paragraph where the judge says, hey, you've been coexisting for a year. Not correct. Material fact, wrong. Second, I'm giving an adverse inference because Home Chef, you didn't do a survey contrary to case law, 810. So that's the specific site I believe you're looking for. The judge said coexistence for well over a year. The third point, yes, Home Chef had a billion dollars in sales in 2020. And do you know how they got there? Because a young man named Pat Petelic started in 2014 just down the street in his apartment delivering meals. In 2014. In 2018, he'd grown that business using that mark, that Home Chef house mark, to grow the business to $250 million in 2018 when Kroger merged with it. By 2020, COVID had hit and sales had gone up. In large part because Kroger started selling Home Chef's carefully curated and obtained products. The question is, well, you have a billion dollars in sales. What about the other side? Well, a 27 billion euro company called Takeaway paid $7 billion to buy Grubhub in 2021. And what did Grubhub do? Their vice president of growth, Kirshen, at 46-4 paragraph 26 put it best, brand awareness is critical to market share. So the first thing they did was put the Takeaway 27 billion euro mark that you see in their brief with the house and each country has it and says, bam, you're now part of the board. Okay, you need to wrap up. Thank you very much. Thanks to both counsel. We will take this case under advisement.